United States District Court
Southern District of Texas

**ENTERED**
November 09, 2023
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| SANDY SANTOS THOMPSON *as next friend of* SHANNON THOMPSON, | § § § § | |
| Plaintiff, | § | CIVIL ACTION NO. H-23-1083 |
| v. | § § | |
| PHILLIPS 66 COMPANY *and* CAVERN SOLUTIONS, INC., | § § § | |
| Defendants. | § § | |

**MEMORANDUM AND ORDER**

Shannon Thompson was working in the oil field for Universal Wellhead Services when the well on which he was working blew out.  He was terribly burned.  In March 2023, his wife, Sandy Santos Thompson, sued Phillips 66 Company, the well owner and operator, and Cavern Solutions, Inc., a contractor working on the well.  Sandy Thompson sued in Texas state court on her husband's behalf, alleging negligence and seeking damages.  A short time later, Phillips 66 removed to this court in a "snap removal" filed before the in-state codefendants had been served.  Because the Thompsons lived in New Mexico at the time, removal jurisdiction was present.  Within a week of removal, Phillips 66 answered the complaint; two months later, Cavern also answered.  (Docket Entry Nos. 5, 11).

In May 2023, Sandy Thompson sued Phillips 66, Cavern, and other defendants in Texas state court, seeking damages on her own behalf for loss of consortium and related claims. (Docket Entry No. 17 at 3).  The Thompsons had moved to Texas, so she sued as a Texas citizen.  Her state-court case asserted the same factual and legal bases for liability as this first-filed federal case. The state-court case presents no basis for federal jurisdiction.

Phillips 66 moved in the state court for an abatement or stay on the ground that the state case was derivative of, and second to, this first filed federal case.  On that same date, before meaningful discovery but after Phillips 66 had successfully moved to designate Universal Wellhead Solutions as a responsible third-party, the Thompsons moved for voluntary dismissal without prejudice of this federal case under Rule 41(a)(2) of the Federal Rules of Civil Procedure. (Docket Entry Nos. 17, 24).  The primary basis of the motion to dismiss is their desire to refile and proceed in the Texas state court.  The Thompsons have been in Texas since a few months after the accident and intend to make Texas their domicile.  Phillips 66 and Cavern oppose, arguing that this court has "dominant jurisdiction," and that the Thompsons are improperly using voluntary dismissal to achieve untimely remand. (Docket Entry No. 25 at 1).

Based on the parties' briefs, the record, and the relevant law, the court grants the Thompsons' motion for voluntary dismissal.  The reasons are set out below.

## I.      The Legal Standard for Dismissal

Rule 41(a)(2) "precludes a plaintiff from dismissing a lawsuit without the court's permission if either an answer or a motion for summary judgment has been served on the plaintiff and the defendant does not consent to dismissal." *Hyde v. Hoffman–La Roche, Inc.*, 511 F.3d 506, 509 (5th Cir. 2007) (citing Fed. Rule Civ. P. 41(a)(2)). The court may dismiss the action only "on terms that [it] considers proper." Fed. R. Civ. P. 41(a)(2). "A district court's decision to dismiss a lawsuit under Rule 41(a)(2) is reviewed for abuse of discretion." *Hyde*, 511 F.3d at 509.

A motion for voluntary dismissal should be granted "unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging Inc.,* 279 F.3d 314, 317 (5th Cir. 2002). "The primary purpose of Rule 41(a)(2) is to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions." *Id.* (quotation omitted). !"Where the plaintiff does not seek dismissal until

a late stage and the defendants have exerted significant time and effort, the district court may, in

its discretion, refuse to grant a voluntary dismissal." *Hartford Acc. & Indem. Co. v. Costa Lines*

*Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990).

## II.    Analysis

Phillips 66 and Cavern argue that because the Thompsons filed this case before Sandy

Thompson filed her state-court loss-of-consortium case, this case must, or at least should, proceed

to resolution first and the second-filed state-court case should be abated.  Phillips 66 and Cavern

moved in the state court to abate that case, asserting the doctrine of dominant jurisdiction as the

basis of what they described as a mandatory abatement, and the principle of comity as the basis of

a discretionary abatement. (Docket Entry No. 27 at 1).  They argued that Sandy Thompson's loss-

of-consortium claim pending in the state court is derivative of Shannon Thompson's negligence

claims, while acknowledging that if this federal case is dismissed without prejudice, the

Thompsons will assert their negligence claims in the pending state-court loss-of-consortium case.

(Docket Entry No. 25 at 3).  The state court has stayed the case before it until this court decides

the Thompsons' motion to dismiss.

Phillips 66 and Cavern argue that they would be prejudiced by dismissal, even at this early

stage of this case.  They cite as evidence of prejudice "the loss of abatement in the second-filed

case," the loss of the work done in this case—initial disclosures and designation of a responsible

third party—the delay in resolving questions about the Owner Controlled Insurance Programs that

were apparently in place, and the unjustified "reward [for] Plaintiffs' flagrant forum shopping."

(Docket Entry No. 27 at 4).

Phillips 66 and Cavern acknowledge that "the issue of whether dismissal under Rule

41(a)(2) is proper under these circumstances appears to be a matter of first impression." (Docket

Entry No. 30 at 1).  They do not acknowledge, at least not directly, that plaintiffs always "shop"

3

for—or, less pejoratively, choose—their forum, and that snap removals are themselves a form of defense-side forum shopping.  Adam B. Sopko, *Swift Removal*, 13 FED. CTS. L. REV. 1, 10 (2021) ("A strict text-based reading of § 1441(b)(2) places a thumb on the scale for defendants to engage in forum shopping[.]").

In response, the Thompsons argue that this federal suit is in an early stage, noting that "there is no dispositive motion on file . . . [t]he defendants have not been required to . . . exert any significant time or effort on the case merits [and] [d]ismissal will not impair any legal defense." (Docket Entry No. 24 at 3).  The Thompsons point to cases in which voluntary dismissal was granted at far more advanced stages of litigation, including after a summary judgment motion was filed, *Miller, Next Friend of RM v. Christus St. Michael Health Sys.*, No. 5:17-CV-00130, 2019 WL 8301674 (E.D. Tex. July 10, 2019), and on the eve of trial, *Robles v. Atl. Sounding Co.*, 77 F. App'x 274 (5th Cir. 2003).

The key issue is whether granting the Thompsons' motion to dismiss Shannon Thompson's claims in this case without prejudice, in order to assert his claims with Sandy Thompson's claims for loss of consortium in the pending state-court case, will prejudice Phillips 66 and Cavern.  The defendants cite to *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314 (5th Cir. 2002), in which the Fifth Circuit vacated the district court's dismissal of a case with prejudice.  The plaintiffs had moved for dismissal without prejudice, but they had failed to explain why they sought dismissal or to identify where they intended to refile the dismissed action. *Id.* at 319. As a result, the district court could not evaluate whether the defendants risked losing a defense if the motion to dismiss without prejudice was granted. The Fifth Circuit held that, while the district court could have denied the motion to dismiss without prejudice, the court had abused its discretion by converting the motion to a dismissal with prejudice. *Id.* at 320.

4

Here, unlike in *Elbaor*, the Thompsons have clearly stated their intent to refile the claims asserted in this removed case in the pending Harris County state-court case.  They have explained their primary motivation as their permanent move to Texas.[1]  (Docket Entry No. 24).  The defects that made dismissal without prejudice improper in *Elbaor* are not present in this case.

"Plain legal prejudice often occurs where the grant of a motion for voluntary dismissal causes the non-movant to be stripped of an otherwise available defense . . . [or] regarding the timing of a motion for voluntary dismissal." *Robles*, 77 F. App'x at 275. Phillips 66 and Cavern do not argue that they are at risk of losing a defense if this case is dismissed and the litigation proceeds in the state court.  Nor do they argue that having to try the case in state rather than federal court is plain legal prejudice.  *See, e.g.*, *Manshack v. Sw. Elec. Power Co.*, 915 F.2d 172, 174 (5th Cir. 1990)) ("[A] fine line sometimes exists between imposing 'plain legal prejudice' and merely subjecting the defendant to another lawsuit—in this case the dismissal seems to fall on the latter side of that line.").  The early stage of this litigation, which was filed and removed in March 2023 and is in the first stages of discovery, is a strong argument against finding legal prejudice from dismissal followed by litigation in the state court.

The Fifth Circuit has held that voluntary dismissal in favor of state court litigation does not give rise to legal prejudice when "only seven months had elapsed between removal and the motion to dismiss, no dispositive motions had been filed, and depositions had not begun." *John M. Crawley, L.L.C. v. Trans-Net, Inc.*, 394 F. App'x 76, 79 (5th Cir. 2010).  Here, only three months

---

[1] The Thompsons also note that an individual injured in the same accident has filed suit against Phillips 66 and Cavern, as well as others, in a Texas state court. *Huff v. Cavern Solutions*, No. 2023-39463 (157th Dist. Ct., Harris County, Tex. June 27, 2023).  The Thompsons argue that the presence of a related case in state court is another basis to have this federal case dismissed so that the claims may proceed in state court.  It is unclear that a separate pending state court case involving the same incident is properly considered as a reason for voluntarily dismissing this federal case to permit it to proceed in state court.

elapsed between removal and the motion to dismiss; no dispositive motions have been filed; and only initial disclosures have been exchanged. The information in those disclosures can be used in the state court litigation.  Phillips 66 and Cavern have not shown legal prejudice that precludes voluntary dismissal.

The main argument Phillips 66 and Cavern make is that the Thompsons are in effect attempting to remand this case after the time for doing so has expired. (Docket Entry No. 25 at 3). At the time of removal, the Thompsons had no basis for remand.  Although they have since moved to Texas, facts arising after removal do not alter jurisdiction. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004) ("[F]or purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing.").  Even so, there is no prohibition on voluntarily dismissing a federal case in order to refile it in state court.  *See Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 293 (5th Cir. 2016) ("It is not uncommon for plaintiffs to use voluntary dismissal to 'secure their preferred forum,' such as when they seek to undo removal and return to state court.").

The dominant jurisdiction argument is similarly unavailing. "Dominant jurisdiction" is a doctrine generally used by state courts when parties sue each other in the courts of different states over the same dispute.  *See, e.g.*, *Hiles v. Arnie & Co., P.C.*, 402 S.W.3d 820 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("[T]he court in which suit is first filed generally acquires dominant jurisdiction to the exclusion of other courts *if* venue is proper in the county in which suit was first filed." (quoting *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005))).  It is a doctrine usually cited in horizontal jurisdiction issues arising in state courts, not in vertical jurisdiction issues between state and federal courts. *See, e.g.*, *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 n.3 (5th Cir. 1996) (rejecting the "dominant jurisdiction" approach in

6

determining federal jurisdiction and explaining that "[w]hen two suits are pending simultaneously in two different courts, preclusiveness of one as to the other is determined not by which was filed first, but by which reaches judgment first."); *Ekholm v. T.D. Ameritrade, Inc.*, No. 3:13-CV-0142, 2013 WL 4223128, at *3 n.5 (N.D. Tex. Aug. 14, 2013) ("[W]hen suits are filed in federal court and state court, dominant jurisdiction does not apply.").

Although Phillips 66 and Cavern cite *Leffall v. Johnson*, 2002 WL 125824, *1-2 (Tex. App.—Beaumont 2002, no pet.), for the proposition that dominant jurisdiction also applies to cases in federal court, *Leffall* does not examine or mention dominant jurisdiction. Instead, the *Lefall* court examined the role of the state court post-removal, holding that "[r]emoval leaves the state court without jurisdiction in the proceedings" and the state court may not proceed unless and until the federal case is remanded. *Id.*

The motion for voluntary dismissal is granted.  The defendants may move for attorneys' fees or costs associated with this case. *W. Falcon, Inc. v. Moore Rod & Pipe, LLC*, No. 13-CV-2963, 2015 WL 3823629, at *4 (S.D. Tex. June 18, 2015) ("When plaintiffs move to dismiss voluntarily without prejudice under Rule 41(a)(2), courts commonly award the defendants their attorneys' fees and costs." (citing  *Mort. Guar. Ins. Corp. v. Richard Carylon Co.,* 904 F.2d 298, 300 (5th Cir. 1990)).

SIGNED on November 9, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

7